United States District Court
Southern District of Texas
ENTERED
September 10, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-25-1907 |
| | § | |
| NNWOOD PHARMACY LLC, *et. al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## ORDER

The Court is in receipt of the United States' Memorandum Supporting the Assessment of Penalties Against Defendants (Document No. 26), and Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants (Document No. 28). Having considered the submissions and applicable law, the Court determines that penalties in the amount of $10,300 should be assessed against the Defendants in this matter.

## I. BACKGROUND

This is an action brought by the United States to recover civil penalties. The United States alleges that Defendants Nnwood Pharmacy LLC, Cheryl Brew Greenleaf, and Wendell Kirk Greenleaf (collectively "Defendants") violated the Controlled Substances Act ("CSA") by dispensing 99 fraudulent prescriptions and violating record keeping requirements for 8 controlled substances.

Based on the foregoing, on April 28, 2025, the United States filed suit in this Court, pursuant to federal question jurisdiction, bringing claims against Defendants for: (1) "civil penalties for unlawful dispensing of controlled substances"; (2) "civil penalties for failing to make, keep, or furnish records and reports"; and (3) "injunctive relief[.]"[1] On June 18, 2026, the Court granted the United States' motion for partial summary judgment finding that Defendants did violate the CSA as alleged by the United States.[2] On July 20, 2026, the United States filed its memorandum in support of civil penalties.[3] On August 6, 2026, Defendants filed their memorandum in support of lower civil penalties.[4]

## II. LAW & ANALYSIS

The United States requests that this Court impose a maximum penalty of $8,366,018 for 107 total violations of the CSA.[5] In response, Defendants contend

---

[1] *Plaintiff's Complaint*, Document No. 1 at 9–10.

[2] *See Order Granting Partial Summary Judgment*, Document No. 24 at 11; *see also The United States' Motion for Partial Summary Judgment*, Document No. 20 at 1.

[3] *See United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 26 at 1.

[4] *See Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 1.

[5] *See United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 26 at 9.

that "[s]uch draconian penalties are neither warranted by the facts nor required by law."[6]

21 U.S.C. § 842(a)(1) makes it unlawful for an individual "to distribute or dispense a controlled substance in violation of section 829[.]" 21 U.S.C. § 842(a)(1). Violations of (a)(1) are subject to a maximum adjusted penalty of $82,950 per violation. *See* 21 U.S.C. § 842(c); 28 C.F.R. § 85.5 (providing an inflation adjustment). 21 U.S.C. § 842(a)(5) makes it unlawful for an individual "to refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration . . . or information required under this subchapter[.]" 21 U.S.C. § 842(a)(5). Violations of (a)(5) are subject to a maximum adjusted penalty of $19,246 per violation. *See* 21 U.S.C. § 842(c); 28 C.F.R. § 85.5 (providing an inflation adjustment).

"The Fifth Circuit has not addressed how a civil penalty under Section 842(c) should be calculated." *United States v. Hernandez*, 794 F. Supp. 3d 456, 474 (W.D. Tex. 2025). However, courts generally "look to four factors: '(1) the level of the defendant's culpability; (2) whether and to what extent the defendant profited from the unlawful conduct; (3) the harm to the public; and (4) the defendant's financial capacity to pay a penalty.'" *Hernandez*, 794 F. Supp. 3d at 474 (citing *United States*

[6] *Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 2.

*v. Lopez*, No. SA-16-CA-76-FB (HJB), 2017 WL 8182744, at *3 (W.D. Tex. Mar. 20, 2017)). The Court will now consider the aforementioned factors in relation to the current matter.

*1. Defendants' Level of Culpability*

The Court will begin by considering the Defendants' level of culpability. The United States contends that "due to the level of high culpability, the defendants should be assessed the maximum civil money penalty per violation[.]"[7] In response, Defendants contend that "culpability is minimal" and that "even if liability may be established without proof of intent, the amount of the penalty must be calibrated to the defendant's culpability."[8]

In support of its position, the United States contends, in relevant part, that "despite her knowledge of the fraudulent prescriptions and unlawful dispensing practices of the pharmacy, nothing was done to correct the issue" and that "the unlawful conduct continued until the DEA audit on July 16, 2021, and beyond."[9]

---

[7] *United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 26 at 4.

[8] *Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 9, 10. To the extent that Defendants contest liability at this point, the Court notes that liability has already been found in this case. *See Order Granting United States' Motion for Partial Summary Judgment*, Document No. 24.

[9] *United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 26 at 4.

Furthermore, the United States provides this Court with non-binding authority suggesting that Defendants' actions in this matter exhibit a high level of culpability.[10]

In response, Defendants contend that the following demonstrate minimal culpability: (1) "good-faith compliance systems"; (2) "reliance on electronic verification systems"; (3) "proactive verification of legitimate medical purpose"; (4) "extraordinary circumstances"; and (5) "no pattern of willful noncompliance[.]"[11] The Court has considered the submissions and notes the undisputed evidence in this matter establishing that Defendant Cheryl Brew Greenleaf knew of red flags associated with several prescriptions but nonetheless issued the prescriptions.[12] However, the Court also notes Defendants' contention that "[t]he violations appear to be isolated incidents arising from technical failures and extraordinary circumstances, not a business model premised on regulatory evasion."[13]

---

[10] *See United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 26 at 4 (citing *United States v. Bradshaw*, 2024 WL 4521387, at *4 (W.D. Okla. 2024); *United States v. Salcedo*, 2003 WL 21196843, at *2 (E.D. N.Y. 2003); *United States v. Poulin*, 926 F. Supp. 246, 254 (D. Mass. 1996)).

[11] *Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 10–13.

[12] *See The Government's Motion for Partial Summary Judgment*, Document No. 20, Exhibit Q at 36:11–18; 43:16–20 (*Deposition of Defendant Cheryl Brew Greenleaf*).

[13] *Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 13.

Finally, having conducted its own independent review, the Court notes that Defendants' culpability in this matter is relatively low when compared to similar matters involving violations of 21 U.S.C. § 842(a)(1) and 21 U.S.C. § 842(a)(5).[14] Based on the foregoing, and the Court's review of the applicable facts in this matter, the Court finds that the factor of culpability supports a relatively minimal penalty. The Court will now consider to what extent, if any, the Defendants profited from the violations.

*2. Defendants' Profits*

The United States provides that it "is not aware of the defendants' profit from the violations."[15] However, the United States further contends that "[t]he profit factor is not significant, and thus does not significantly lower the penalty[.]"[16] In response, Defendants contend that "[t]he alleged violations arose from technical errors and extraordinary circumstances—not from a profit-seeking scheme."[17] The Court notes that the defendants' profits are generally weighed less than the

---

[14] *See e.g. United States v. Hernandez*, 794 F. Supp. 3d 456, 475 (W.D. Tex. 2025) (Noting that the defendant in this matter had been admonished by the Texas Board of Medicine for issues related to the issuance of prescriptions.).

[15] *United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 26 at 5.

[16] *United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 26 at 5.

[17] *Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 16.

defendant's culpability. *See United States v. Blackmon*, No. 16-CV-129-JED-JFJ, 2017 WL 5565675, at *6 (N.D. Okla. 2017) (finding that direct profits were "not a significant consideration").

Regardless of the weight to be given to the factor, the Court notes that the defendants' profit is a consideration when determining what penalties, if any, to impose in this matter. Based on the foregoing, and the concession of the United States that it has no evidence of Defendants' profits in this matter, the Court finds that this factor weighs in favor of the Defendants, and thus, a minimal penalty. The Court will now consider Defendants' ability to pay.

*3. Defendants' Ability to Pay*

The United States contends that "[t]he defendants' current ability to pay a penalty is not known by the United States."[18] In response, Defendants contend that they have "demonstrated inability to pay[.]"[19] In support of their contention, Defendants supply extensive documents detailing their financial state.[20] Defendants provide that both Cheryl Brew Greenleaf ("Mrs. Greenleaf") and Wendell Kirk Greenleaf ("Mr. Greenleaf") are retired and that their income consists primarily of

---

[18] *United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 26 at 6.

[19] *Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 17.

[20] *See Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 17–18.

Social Security and Mr. Greenleaf's pension.[21] Nonetheless, Mr. and Mrs. Greenleaf reported an adjusted gross income of $112,283 in the 2025 tax year.[22] With respect to Defendant Nnwood Pharmacy, the Court notes that it has sold its assets and is no longer operational.[23] Lastly, the Court notes that Mrs. Greenleaf suffers from "debilitating medical conditions that prevent her from working" including a traumatic brain injury, Guillain-Barre Syndrome, and diabetes.[24]

With respect to expenses, Defendants contend that "their mortgage payments, utility bills, medical expenses, and basic living costs consume virtually all of their income."[25] Furthermore, Defendants contend that "[t]hey incur monthly service fees for insufficient funds."[26] Based on the foregoing, the Court finds that the Defendants in this matter have a moderate ability to pay a penalty. As such, the Court finds that

---

[21] *See Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 18.

[22] *See Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 18.

[23] *See Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 3.

[24] *See Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 3.

[25] *Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 19.

[26] *Defendants' Memorandum in Opposition to the United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 28 at 19.

this factor leans slightly in favor of the Defendants. The Court will now consider the harm to the public.

*4. Harm to the Public*

The United States contends, in relevant part, that "[i]t is difficult to know whether the missing and excess scheduled narcotics were diverted, but it is likely considering the defendants' lack of concern about their historic violations of the CSA, their numerous failures to keep and make available required records, and the fact that the pharmacy was robbed on at least two occasions."[27] In response, Defendants contend that "[t]he Government's memorandum relies on speculation and theoretical risk rather than actual evidence of harm."[28]

Having considered the parties' submissions and the applicable facts in this matter, the Court finds that the Government has not provided any evidence to suggest that any of the 99 prescriptions that were dispensed under an invalid DEA number were diverted for illicit use or caused any concrete harm to the public. With respect to recordkeeping violations, the Government has provided no evidence that the violations resulted from the diversion of drugs rather than from technical

---

[27] *United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 26 at 9.

[28] *United States' Memorandum Supporting the Assessment of Penalties Against Defendants*, Document No. 26 at 8. The Court notes that the Government provides no reasoning for why the Defendants in this matter should be penalized for the robberies of the pharmacy.

malfunctions or theft. Based on the foregoing, the Court finds that this factor weighs in favor of the Defendants.

Having considered the relevant factors, the Court finds that the Government has failed to show that the maximum penalty is warranted in this matter.[29] Based on the foregoing, and the Court's consideration of penalties awarded in similar cases, the Defendants' relatively minimal culpability, lack of profits, the Defendants' moderate ability to pay, and the minimal harm to the public, the Court finds that a

...opriate in the amount of $50 per violation of 21 U.S.C. §

...violation of 21 U.S.C. § 842(a)(1).[30] As such, the Court finds

...y to the United States civil monetary penalties in the amount

---

[29] With respect to Defendants' contention that Mr. Greenleaf should not be held liable, the Court notes that liability has already been established in this case and incorporates by reference all reasoning in its prior Order granting summary judgment. *See Order Granting United States' Motion for Partial Summary Judgment*, Document No. 24.

[30] In determining the appropriate amount for the penalty in this matter, the Court has considered the amounts awarded by other courts in similar matters. *See Hernandez*, 794 F.Supp.3d 456 at 477 (imposing a penalty of $100 per invalid prescription violation and $50 per recordkeeping violation); *see also Blackmon*, 2017 WL 5565675, at *6 (imposing penalties ranging from $250 to $1,000 per violation); *United States v. Paskon*, No. 4:07-CV-1161 (CEJ), 2008 WL 4948458 (E.D. Mo. Nov. 10, 2008) (awarding $1,000 per each of seven violations of the CSA).

[31] The Court has calculated the total penalty as follows: (8 X $50) + (99 X $100) = $10,300. 8 representing the 8 violations of 21 U.S.C. § 842(a)(5) and 99 representing the 99 violations of 21 U.S.C. § 842(a)(1).

## III. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Defendants Nnwood Pharmacy LLC, Cheryl Brew Greenleaf, and Wendell Kirk Greenleaf, shall pay to the United States civil monetary penalties in the amount of $10,300 for 99 violations of 21 U.S.C. § 842(a)(1) and 8 violations of 21 U.S.C. § 842(a)(5). The Court further

**ORDERS** that post-judgment interest shall run on this amount from the date of judgment at rate of 4.15%.

SIGNED at Houston, Texas, on this 10 day of September, 2026.

DAVID HITTNER
United States District Judge